IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESSE E. PHILLIPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2523-R |
| | § | |
| GREEN TREE SERVICING LLC, f.k.a. | § | |
| CONSECO FINANCING SERVICES | § | |
| CORP., et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order of Reference, entered April 3, 2006, the District Court referred this case to the United States Magistrate Judge for pretrial management. Before the Court is Defendant Texas Department of Insurance's ("TDI") Motion to Dismiss, filed January 30, 2006. Plaintiff did not file a response.

**BACKGROUND**

The following is a summary of Plaintiff's factual allegations, contained in his complaint. In 1996, Plaintiff purchased land from Defendants Dwayne and Amelia Binder ("Dwayne Binder" and "Amelia Binder" or collectively "the Binders"). (*Pl.'s Compl.* at 8.) Plaintiff purchased a mobile home from Defendant Nationwide Housing Systems, LP ("Nationwide") and moved the home to the property he purchased from the Binders. (*Id.*) Because the mobile home's roof collapsed, Plaintiff purchased another mobile home from Nationwide on April 9, 2000. (*Id.*) Plaintiff states that Nationwide had an obligation to make his first mobile home habitable. (*Id.*) Plaintiff also states that he traded in the original mobile home and purchased the new mobile home with the understanding that Nationwide would remove the first mobile home from Plaintiff's

property. (*Id.*) Plaintiff did not move his new mobile home onto his property because the previous mobile home was still located on the property. (*Id.* at 9.) Plaintiff began making payments on the new mobile home, even though he thought that the sales contract would not be finalized until he moved the new mobile home onto his property. (*Id.*)

After Plaintiff moved the new mobile home onto his property, Hunt County, a county in Greenville, Texas, executed a lien on the mobile home. (*Id.*) Upon investigation, Plaintiff discovered that the previous owner had not paid taxes owed on the mobile home and that Hunt County had perfected liens on the mobile home due to the unpaid taxes. (*Id.*) When he learned of the tax liens, Plaintiff quit making payments on the mobile home. (*Id.* at 10.)

Plaintiff contacted Nationwide about the unpaid taxes, and Nationwide told Plaintiff that they were not responsible for paying the taxes. (*Id.* at 9.) Plaintiff also contacted Conseco, the company that lent Plaintiff the money to purchase the mobile home, who also told Plaintiff that they were not responsible for paying the taxes. (*Id.*) Plaintiff asked Conseco to cancel the sales contract and refund his money, but Conseco refused and told Plaintiff that if he did not make his payments on the home they would repossess it. (*Id.* at 10.) At this point, Plaintiff filed liens on the home for storage, improvements, and maintenance. (*Id.*)

On July 30, 2002, Defendant Lisa Mooneyhan ("Mooneyhan") of Navarro County Sheriff's Department served a "writ" upon Plaintiff at the wrong address. (*Id.*) She delivered the "writ" on Plaintiff's first mobile home with the collapsed roof. (*Id.*) Because Plaintiff did not receive the "writ," a default judgment was rendered against him by Defendant Judge John Jackson. (*Id.* at 10-11.) Plaintiff claims that the default judgment was improperly granted because he had filed an answer, a motion for a new jury trial, change of venue, and dismissal of the petition. (*Id.* at 3.)

In March 2002, Mooneyhan handed Plaintiff a "writ" to appear in Defendant Judge Connie Mayfield's ("Judge Mayfield") courtroom. (*Id.* at 11.) Conseco was suing Plaintiff for "back payments on the property and surrender of the mobile home." (*Id.*) Judge Mayfield dismissed the liens Plaintiff had filed on the mobile home. (*Id.*) While Plaintiff was in the courtroom, he observed a Conseco employee coming out of Judge Mayfield's chambers, followed by Judge Mayfield. (*Id.*) On April 2, 2002, Plaintiff received a notice from Judge Mayfield's court that Conseco's case was dismissed for lack of jurisdiction. (*Id.*)

On September 19, 2003, a writ was placed on the door of Plaintiff's mobile home, stating the mobile home was going to be repossessed. (*Id.* at 12.) After receiving the writ, Plaintiff filed for bankruptcy. (*Id.*) The mobile home was repossessed by the Navarro County Sheriff's Department on September 23, 2003. (*Id.*) While the Navarro County Sheriff's Department was dismantling the mobile home for removal, Plaintiff informed Mooneyhan and other personnel that he had filed for bankruptcy and that the automatic stay prevented them from repossessing his home. (*Id.* at 12-13.) In addition to extensive damage to Plaintiff's mobile home and personal property, he alleges that they took five guns from his home and only returned three guns to him. (*Id.* at 14.) Sometime during October of 2003, the mobile home was returned to Plaintiff's property. (*Id.* at 15.)

Plaintiff gave Foremost Insurance notice that his mobile home had been repossessed and suffered extensive damage. (*Id.* at 16.) Two adjusters from Foremost Insurance - Defendants Bobbie Nors ("Nors") and Chris Dyer ("Dyer") - visited Plaintiff at his home. (*Id.*) Plaintiff alleges that Dyer's grandfather was related to the Binders and that Dyer, therefore, had a vested interest in denying Plaintiff's claims. (*Id.*) Foremost Insurance paid some of Plaintiff's claims for damage to

3

his mobile home but denied subsequent claims. (*Id.* at 17, 18.) Plaintiff contacted the Texas Insurance Commission ("Insurance Commission") and informed the Insurance Commission that Foremost Insurance had wrongfully denied his claim, but the Insurance Commission took no action. (*Id.* at 18-19.)

Foremost Insurance later cancelled Plaintiff's policy, due to faulty wiring in Plaintiff's mobile home. (*Id.* at 19.) In December of 2005, Plaintiff reapplied for insurance with Foremost Insurance and received it. (*Id.*) Plaintiff subsequently filed a claim for animal damage to his mobile home, which Foremost denied. (*Id.*)

On November 10, 2003, Plaintiff received notice that the Binders had begun foreclosure proceedings against Plaintiff. (*Id.* at 17.) The bankruptcy court sanctioned the Binders for initiating foreclosure proceedings in violation of the automatic stay. (*Id.*)

Plaintiff, proceeding *pro se*, initiated this lawsuit on December 29, 2005. Plaintiff named the following parties as Defendants: (1) Green Tree Servicing, LLC (also known as Conseco Financing Servicing Corporation); (2) Nationwide; (3) Navarro County, County Offices, and County Personnel; (4) Lisa D. Mooneyhan; (5) Charles R. Statham; (6) Marilyn Greer; (7) Judge John H. Jackson; (8) Judge Connie Mayfield; (9) Dwayne Binder; (10) Amelia Binder; (11) Paul E. Fulbright; (12) Amanda Doan; (13) the United States Bankruptcy Court for the Northern District of Texas, Dallas Division; (14) the Honorable Harlin D. Hale, United States Bankruptcy Court Judge for the Northern District of Texas, Dallas Division; (15) Attorneys of Dallas County; (16) Portia D. Bosse, attorney of record for Navarro County; (17) Michael Stockham, counsel for Nationwide Housing; (18) Katharine Battaia Richter; (19) Ronald Cross; (20) Richard McKinney; (21) E.F. Mano DeAyala; (22) James Bavouset; (23) Foremost Insurance; (24) Chris Dyer; (25) Bobbie Nors;

4

(26) Ivey Lynn Brush; (27) Gregory Scott; (28) Hale County; (29) Judge Robert W. Kinkaid; and (30) TDI.

The exact nature of Plaintiff's claims is unclear. Plaintiff seems to allege that Defendants violated his civil rights pursuant to 42 U.S.C. § 1983 by conspiring to fraudulently deprive him of property without due process of law. (*See Pl.'s Compl.* at 1.) The Court assumes Plaintiff is attempting to allege a § 1983 civil rights violation because, otherwise, the Court would lack subject matter jurisdiction. Diversity jurisdiction is not appropriate because complete diversity does not exist among the parties, and any other possible cause of action Plaintiff has would be a state law claim. Plaintiff's claim against TDI seems to arise out the Insurance Commission's failure to act when Plaintiff notified the Insurance Commission that Foremost Insurance had denied Plaintiff's claims. (*See Pl.'s Compl.* at 18-19.)

## STANDARD OF REVIEW

When considering a motion to dismiss, the Court accepts as true the factual allegations plead by the non-moving party and any reasonable inferences that the Court can draw from the factual allegations. *Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 437 (N.D. Tex. 2004) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). The non-moving party "must plead specific facts, not mere conclusory allegations" to survive a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The movant cannot easily prevail because the law does not favor motions to dismiss. *Mahone v. Addicks Util. Dist.*, 836 F.2d 921, 926 (5th Cir. 1988). Courts should not grant a motion to dismiss unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

5

Since Plaintiff in this case is proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The Court has an obligation to construe *pro se* plaintiffs' briefs more permissively and to make more allowances. *AMX, Int'l, Inc.*, 7 F.3d at 75. "[P]*ro se* litigant[s] [are] subject to less stringent standards than [those] represented by counsel." *Id.* (citing *Hughes v. Rowe*, 449 U.S. at 9).

## **DISCUSSION**

TDI asserts two arguments in support of its motion to dismiss. First, TDI argues that the Court does not have subject matter jurisdiction over Plaintiff's claim. (*See Def.'s Mot.* at 2.) Because the Court construes Plaintiff's claim as a § 1983 claim sufficient to invoke the Court's federal question jurisdiction, the Court does not address TDI's subject matter jurisdiction argument. Second, TDI argues that Eleventh Amendment Immunity bars Plaintiff's claim. (*See id.* at 2-4.)

Eleventh Amendment immunity bar suits against "an unconsenting State" or State agency in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). A State may waive its Eleventh Amendment immunity or consent to suit in federal court. A State "must specify [its] intention to subject itself to suit in federal court" in order to waive its immunity. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 305 (1990). *See also Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985); *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171 (1909) (cited by *Edelman v. Jordan*, 415 U.S. 651, 673 (1974)).

The Court concludes that Eleventh Amendment immunity bars Plaintiff's claim against TDI. TDI is an agency of Texas that has the responsibility of regulating the execution of insurance laws. *See* TEX. INS. CODE § 31.002 (Vernon 2006) (outlining TDI's function and responsibilities). TDI

6

...

has not consented to this lawsuit, nor does the Court find that the State has specified an "intention to subject itself to suit in federal court" for claims such as Plaintiff's. *Feeney*, 495 U.S. at 305. *See Howlett v. Rose*, 496 U.S. 356, 365 (1990) (stating that "the State and arms of the State, which have traditionally enjoyed Eleventh Amendment immunity, are not subject to suit under § 1983 in either federal court or state court); *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 64 (1989).

## CONCLUSION

The Court concludes that Eleventh Amendment immunity bars Plaintiff's claim against TDI.

## RECOMMENDATION

The Court recommends that the District Court dismiss Plaintiff's claim against TDI with prejudice.

Signed this 7th day of July, 2006.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

The United States District Clerk shall serve a true copy of these conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE