IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JESSE E. PHILLIPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-2523-O |
| | § | |
| GREEN TREE SERVICING LLC, | § | |
| f.k.a. CONSECO FINANCING | § | |
| SERVICES CORP., et al., | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the District Court's Order, entered April 3, 2006, this case has been referred to the United States Magistrate Judge for pretrial management. Before the Court is Defendants Paul E. Fulbright, Dwayne Binder, and Amelia Binder's ("Defendants") Objection to Jurisdiction, which was filed as part of Defendants' answer on March 2, 2006. Plaintiff filed a response on March 8, 2006.

**BACKGROUND**

The following is a summary of Plaintiff's factual allegations, which are contained in his complaint. In 1996, Plaintiff purchased land from Defendants Dwayne and Amelia Binder ("Dwayne Binder" and "Amelia Binder" or collectively "the Binders"). (Pl.'s Compl. at 8.) Plaintiff purchased a mobile home from Nationwide and moved the home to the property he purchased from the Binders. (*Id.*) Because the mobile home's roof collapsed, Plaintiff purchased another mobile home from Nationwide on April 9, 2000. (*Id.*) Plaintiff states that Nationwide had an obligation to make his first mobile home habitable. (*Id.*) Plaintiff also contends that he traded

1

in the original mobile home and purchased the new mobile home with the understanding that Nationwide would remove the first mobile home from Plaintiff's property. (*Id.*) Plaintiff did not move his new mobile home onto his property because the previous mobile home was still located on the property. (*Id.* at 9.) Plaintiff began making payments on the new mobile home, even though he thought that the sales contract would not be finalized until he moved the new mobile home onto his property. (*Id.*)

After Plaintiff moved the new mobile home onto his property, Hunt County executed a lien on the mobile home. (*Id.*) Upon investigation, Plaintiff discovered that the previous owner had not paid taxes owed on the mobile home and that Hunt County had perfected liens on the mobile home due to the unpaid taxes. (*Id.*) When he learned of the tax liens, Plaintiff quit making payments on the mobile home. (*Id.* at 10.)

Plaintiff contacted Nationwide about the unpaid taxes, and Nationwide told Plaintiff that they were not responsible for paying the taxes. (*Id.* at 9.) Plaintiff also contacted Conseco, the company that lent Plaintiff the money to purchase the mobile home, who also told Plaintiff that they were not responsible for paying the taxes. (*Id.* at 10.) Plaintiff asked Conseco to cancel the sales contracts and refund his money, but Conseco refused and told Plaintiff that if he did not make his payments on the home they would repossess it. (*Id.*) At this point, Plaintiff filed liens on the home for storage, improvements, and maintenance. (*Id.*)

On July 30, 2002, Defendant Lisa Mooneyhan ("Mooneyhan") of Navarro County Sheriff's Department served a "writ" upon Plaintiff at the wrong address. (*Id.*) She delivered the "writ" on Plaintiff's first mobile home with the collapsed roof. (*Id.*) Because Plaintiff did not receive the "writ," a default judgment was rendered against him by Defendant Judge John Jackson. (*Id.* at

10–11.) Plaintiff claims that the default judgment was improperly granted because he had filed an answer, a motion for a new jury trial, change of venue, and dismissal of the petition. (*Id.* at 3.)

In March 2002, Mooneyhan handed Plaintiff a "writ" to appear in Defendant Judge Connie Mayfield's ("Judge Mayfield") courtroom. (*Id.* at 11.) Conseco was suing Plaintiff for "back payments on the property and surrender of the mobile home." (*Id.*) Judge Mayfield dismissed the liens Plaintiff had filed on the mobile home. (*Id.*) While Plaintiff was in the courtroom, he observed a Conseco employee coming out of Judge Mayfield's chambers, followed by Judge Mayfield. (*Id.*) On April 2, 2002, Plaintiff received a notice from Judge Mayfield's court that Conseco's case was dismissed for lack of jurisdiction. (*Id.*)

On September 19, 2003, a writ was placed on the door of Plaintiff's mobile home, stating the mobile home was going to be repossessed. (*Id.* at 12.) After receiving the writ, Plaintiff filed for bankruptcy. (*Id.*) The mobile home was repossessed by the Navarro County Sheriff's Department on September 23, 2003. (*Id.*) While the Navarro County Sheriff's Department was dismantling the mobile home for removal, Plaintiff informed Mooneyhan and other personnel that he had filed for bankruptcy and that the automatic stay prevented them from repossessing his home. (*Id.* at 12–13.) In addition to extensive damage to Plaintiff's mobile home and personal property, he alleges that they took five guns from his home and only returned three guns to him. (*Id.* at 14.) Sometime during October of 2003, the mobile home was returned to Plaintiff's property. (*Id.* at 15.)

Plaintiff gave Foremost Insurance notice that his mobile home had been repossessed and suffered extensive damage. (*Id.* at 16.) Two adjusters from Foremost Insurance, Defendants Nors and Dyer, visited Plaintiff at his home. (*Id.*) Plaintiff alleges that Dyer's grandfather was related

to the Binders and that Dyer, therefore, had a vested interest in denying Plaintiff's claims. (*Id.*) Foremost Insurance paid some of Plaintiff's claims for damage to his mobile home but denied subsequent claims. (*Id.* at 17–18.) Plaintiff contacted Defendant Texas Insurance Commission ("Insurance Commission") and informed the Insurance Commission that Foremost Insurance had wrongfully denied his claim, but the Insurance Commission took no action. (*Id.* at 18–19.)

Foremost Insurance later cancelled Plaintiff's policy, due to faulty wiring in Plaintiff's mobile home. (*Id.* at 19.) In December 2005, Plaintiff reapplied for insurance with Foremost Insurance and received it. (*Id.*) Plaintiff subsequently filed a claim for animal damage to his mobile home, which Foremost denied. (*Id.*)

On November 10, 2003, Plaintiff received notice that the Binders had begun foreclosure proceedings against Plaintiff. (*Id.* at 17.) According to Plaintiff's Complaint, the bankruptcy court sanctioned the Binders for initiating foreclosure proceedings in violation of the automatic stay. (*Id.*)

Plaintiff, proceeding *pro se*, initiated this lawsuit on December 29, 2005. Fulbright, attorney for the Binders, and the Binders were including in a group of thirty defendants. Many of those thirty defendants have already been dismissed, and the rest have not been served. Defendants, in their answer, assert that the Court lacks jurisdiction in this case.

## **STANDARD OF REVIEW**

This is a Court of limited jurisdiction. *Owen Equip. &Erection Co. V. Kroger*, 437 U.S. 365, 374 (1978). The Court's jurisdiction is confined to cases arising under the United States Constitution, as well as the laws and treaties of the United States. U.S. CONST. art. III. § 2. Defendants claim that Plaintiff's complaint fails to assert a federal issue upon which jurisdiction is

4

based.[1]  While the exact nature of Plaintiff's claims is unclear, Plaintiff seems to allege that Defendants violated his civil rights pursuant to 42 U.S.C. § 1983 by conspiring to fraudulently deprive him of property without due process of law. (*See id.* at 1.) The Court, therefore, assumes Plaintiff is attempting to allege a § 1983 civil rights violation, which would satisfy the federal issue requirement. The jurisdictional analysis, however, does not end there. In order for the Court to continue to have jurisdiction over Plaintiff's § 1983 claim, Plaintiff must show, among other elements, that defendants are state actors. If Defendants are not state actors, Plaintiff would fail to state a claim under § 1983, and the Court would no longer have jurisdiction.

The Fifth Circuit Court of Appeals has held that "when the challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper procedure for the district court is to find that jurisdiction exists and to deal with the objection as a direct attack on the merits of the plaintiff's case." *Daniel v. Ferguson*, 839 F.2d 1124, 1127 (5th Cir. 1988) (citing *Daigle v. Opelousas Health Care, Inc.*, 774 F.2d 1344, 1346–47 (5th Cir. 1985)). In this case, Defendants have only facially challenged the Court's jurisdiction, claiming Plaintiff has not raised a federal issue. Defendants, who are private actors, have not challenged jurisdiction based on an inability to state a § 1983 cause of action. However, the Court may sua sponte dismiss a complaint when a plaintiff fails to state sufficient facts for any cause of action. *Dodd v. Spokane County, Wash.*, 393 F.2d 330 (9th Cir. 1968). In other words, a court may dismiss a complaint whenever it discovers that the allegations in the pleadings are insufficient to sustain its jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 276, 278–80 (1936). Accordingly, the Court, on its own motion,

---

[1]. As Defendants point out, Diversity jurisdiction is not appropriate because complete diversity does not exist among the parties.

will determine whether Plaintiff has adequately stated a § 1983 claim against Defendants.

When considering the dismissal of a case based on a plaintiff's inability to state a claim, the Court accepts as true the factual allegations plead by the plaintiff and any reasonable inferences that the Court can draw from the factual allegations. *See Sw. Airlines Co. v. Farechase, Inc.*, 318 F. Supp. 2d 435, 437 (N.D. Tex. 2004) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)). The plaintiff "must plead specific facts, not mere conclusory allegations" to survive a motion to dismiss. *See Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). Courts should not grant a motion to dismiss unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

Since Plaintiff in this case is proceeding *pro se*, the Court must construe the allegations in the complaint liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam); *Sec. & Exch. Comm'n v. AMX, Int'l, Inc.*, 7 F.3d 71, 75 (5th Cir. 1993) (per curiam). The Court has an obligation to construe a *pro se* plaintiff's brief more permissively and to make more allowances. *AMX, Int'l, Inc.*, 7 F.3d at 75. "[P]*ro se* litigant[s] [are] subject to less stringent standards than [those] represented by counsel." *Id.* (citing *Hughes v. Rowe*, 449 U.S. at 9).

## **DISCUSSION**

To state a § 1983 claim, Plaintiff must show that Defendants acted under the color of law and that their conduct deprived Plaintiff of a constitutional right, privilege, or immunity. *Parratt v. Taylor*, 451 U.S. 527, 532 (1981). Section 1983 does not create substantive rights, but provides a remedy for deprivations of existing rights. *Wilson v. Garcia*, 471 U.S. 261, 278 (1985). To recover under this section, Plaintiff must prove two elements: (1) an individual acting under the color of state

6

law committed the alleged deprivation and (2) the individual deprived the plaintiff of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Parratt*, 451 U.S. at 535.

The Court first addresses whether Plaintiff has plead facts sufficient to fulfill the state action requirement. Section 1983 generally does not provide relief for deprivations caused by private individuals or entities. *See West v. Atkins*, 487 U.S. 42, 49 (1988) (stating that "[t]o constitute a state action, 'the deprivation must be caused by the exercise of some right or privilege created by the State . . . or by a person for whom the State is responsible,' and 'the party charged with the deprivation must be a person who may fairly be said to be a state actor'") (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 936 (1982)). Private individuals can be held liable under § 1983 only in limited circumstances. For example, if private individuals conspire with government officers, the private individuals may be deemed to have acted under the color of state law. *See, e.g.*, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (holding that the plaintiff could bring a § 1983 action against defendant, a private restaurant, if she could prove that the restaurant refused her service due to a state-enforced custom of segregation). Private individuals can also be liable under § 1983 if they perform functions "traditionally exclusively reserved to the State." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 352 (1974). *See, e.g,*, *Marsh v. Alabama*, 326 U.S. 501 (1946).

The Court concludes that Plaintiff has not alleged sufficient facts to fulfill the state action requirement against Defendants. Dwayne and Amelia Binder are landowners who sold Plaintiff his land, and Paul Fulbright is their attorney. Defendants are private actors, who do not work for state entities. Plaintiff does not assert that these parties are state actors. Accordingly, Plaintiff cannot

state a § 1983 claim against them.

Nor does the Court find that the facts alleged by Plaintiff illustrate that the above Defendants conspired with state actors. Plaintiff has named state actors as Defendants, but Plaintiff has not plead facts establishing that the private Defendants conspired with the state actor Defendants. Plaintiff's pleadings allege independent events, linked together by conclusory allegations of conspiracy. Plaintiff must plead specific facts supporting the alleged conspiracy to survive the dismissal. *See Guidry*, 954 F.2d at 281 (requiring a plaintiff to state specific facts rather than "mere conclusory allegations" to survive a motion to dismiss).

## CONCLUSIONS

The Court concludes that Plaintiff has failed to state a claim against Defendants under 42 U.S.C. § 1983 because he has not met the state actor requirement.

## RECOMMENDATION

The Court recommends that the District Court **DISMISS** Plaintiff's claims against Defendants Paul Fulbright, Dwayne Binder, and Amelia Binder with prejudice.

**SO ORDERED.** December 12, 2007.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

# INSTRUCTIONS FOR SERVICE AND
# NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these findings, conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these findings, conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those findings, conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed findings, conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).